**DISCLOSURE STATEMENT**
**CLERK OF SUPERIOR COURT**

Filed In Office Apr-15-2011 14:33:44
ID# 2011-0062857-CV
Page 1

*Jay C. Stephenson* EH

Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County

CASE NUMBER 11-3631-33
Assigned by Clerk

Dana L. Caselli
PLAINTIFF

VS.

PHH Mortgage Corporation d/b/a Coldwell Banker Mortgage,
a/k/a PHH Mortgage Services, Bank of America
Corporation d/b/a Bank of America, N.A. Promises Solutions LLC,
and McCalla Reyler, LLC
DEFENDANT
TYPE OF ACTION

1. _____ Divorce without Agreement Attached
2. _____ Divorce with Agreement Attached
3. _____ Domestic Relations
4. __✓__ Damages arising out of Contract
5. _____ Damages arising out of Tort
6. _____ Condemnation
7. _____ Equity
8. _____ Zoning – County Ordinance violations (i.e. Injunctive relief- zoning)
9. _____ Zoning Appeals (denovo)
10. _____ Appeal, Including denovo appeal-excluding Zoning

11. _____ URESA
12. _____ Name Change
13. _____ Other
14. _____ Recusal

_____ Adoption

**PREVIOUS RELATED CASES**

Does this case involve substantially the same parties, or substantially the same subject matter, or substantially the same factual issues, as any other case filed in this court? (Whether pending simultaneously or not.)

__✓__ NO

_____ YES – If yes please fill out the following:
1. Case #_____
2. Parties _____ vs. _____
3. Assigned Judge _____
4. Is this case still pending? _____ Yes _____ No
5. Brief description of similarities:

_____

_____

Attorney or Party Filing Suit

Form #0122
Revised 12/01/09



EXHIBIT
A-1

**SECOND ORIGINAL**

## IN THE SUPERIOR COURT OF COBB COUNTY
### STATE OF GEORGIA

DANA L. CASELLI     )
           )
 Plaintiff,      )
           )  CIVIL ACTION NO. *11-1-3631-33*
v.           )
           )
PHH MORTGAGE CORPORATION, )
d/b/a COLDWELL BANKER   )
MORTGAGE, a/k/a PHH MORTGAGE )
SERVICES, BANK OF AMERICA,  )
CORPORATION d/b/a BANK OF  )
AMERICA, N.A., PROMMIS   )
SOLUTIONS, LLC, and    )
McCALLA RAYMER, LLC   )
           )
 Defendants.     )

### SUMMONS

TO THE ABOVE NAMED DEFENDANTS:

  You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

    Brian M. Annino, Esq.
    Neil C. Ligon, Esq.
    Annino & Ligon, LLC
    707 Whitlock Ave., Suite H-13
    Marietta, GA  30064

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 15th day of April, 2011.

JAY C. STEPHENSON,
Clerk of Superior Court

By:_____

(Clerk)

# General Civil Case Filing Information Form (Non-Domestic)

**Court**
☑ Superior
☐ State

**County** _Cobb_

**Docket #** _11-1-3631-33_

**Date Filed** _4/15/2011_
MM-DD-YYYY

**Plaintiff(s)**

_Caselli    Dana   L_
Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

Last    First    Middle I. Suffix Prefix    Maiden

**No. of Plaintiffs** _1_

**Defendant(s)**

_PHH  Mortgage  Corporation  d/b/a  Coldwell Banker_ _a/k/a PHH Mortgage Series_
Last    First    Middle I. Suffix Prefix    Maiden

_Bank of  America Corporation  d/b/a  Bank of America, N.A._
Last    First    Middle I. Suffix Prefix    Maiden

_Pammis  Solutions, LLC_
Last    First    Middle I. Suffix Prefix    Maiden

_McCalla  Remer , LLC_
Last    First    Middle I. Suffix Prefix    Maiden

**No. of Defendants** _4_

**Plaintiff/Petitioner's Attorney**    ☐ Pro Se

_Ligon      Neil      C._
Last    First    Middle I.    Suffix

**Bar #** _141 663_

## Check Primary Type (Check only ONE)

☑ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☐ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☐ Other General Civil Specify _____

## If Tort is Case Type:
(Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☑ Other Specify _Wrongful Foreclosure_

**Are Punitive Damages Pleaded?** ☑ Yes ☐ No

Court Name: www.cobbsuperiorcourtclerk.com
Clerk of Superior Court Cobb County
Jay C. Stephenson

Filed In Office Apr-15-2011 14:33:44
ID# 2011-0062858-CV
Page 1

Filed In Office Apr-15-2011 14:49:56
ID# 2011-0062882-CV
Page 1

*Jay C. Stephenson*

Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY

## STATE OF GEORGIA

Dana L. Caselli _____

_____

### VS

PHH Mortgage Corporation, d/b/a Coldwell Banker   **CIVIL ACTION #** 11-1-3031-33
Mortgage a/k/a PHH Mortgage Services, Bank
of America, corporation d/b/a Bank of America, N.A.,
Prommis Solutions, LLC and McCalla Raymer, LLC

### ORDER RULE NISI

It is hereby ordered that each of the parties be and appear before the

Honorable Judge ____Bodiford____ of the Superior Court, Cobb Judicial

Circuit on the __2__ day of ____May____, 20 11, at 8:30

o'clock A .m., Superior Court Building, Marietta, Georgia to show cause, if any,

why the prayers of the within complaint should not be granted.

So Ordered, This 15 day of ____April____, 20 11.

*Jay C. Stephenson*

**Clerk, Cobb Superior Court**
**Cobb Judicial Circuit**

Presented by:

____Brian Amero____

Attorney for __Plaintiff__

Lien Book    59 Pg   986
Filed and Recorded Apr-18-2011 11:30am
2011-0053177

**IN THE SUPERIOR COURT OF COBB COUNTY**
**STATE OF GEORGIA**

Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

DANA L. CASELLI                          )
                                         )
        Plaintiff,          XR           )
                                         )    CIVIL ACTION NO. 11-1-3631-33
v.                                       )
                                         )
PHH MORTGAGE CORPORATION,                )
d/b/a COLDWELL BANKER                    )
MORTGAGE, a/k/a PHH MORTGAGE             )
SERVICES, BANK OF AMERICA,               )    Cross reference.
CORPORATION d/b/a BANK OF                )       Deed Book 14209, Page 64
AMERICA, N.A., PROMMIS                    )
SOLUTIONS, LLC, and                      )       Deed Book 14209, Page 62
McCALLA RAYMER, LLC                      )
                                         )
        Defendants.                      )

LIS PENDENS NOTICE

TO WHOM IT MAY CONCERN:

The above-styled action was filed on the 14th day of April, 2011, in the Superior Court of

Cobb County, Georgia and being currently pending, the Plaintiff, Dana L. Caselli, files this Lis

Pendens Notice that the above suit concerns, in part, the improved real property described below:

> All that tract or parcel of land lying and being in Land Lot 922 of the 17th District, 2nd. Section,
> Cobb County, Georgia, and being identified and depicted as Unit No. 1306 hereafter sometimes
> referred to as the "Unit" of Wynne's Ridge, a Condominium, together with all right, title and
> interest of Grantor in said Unit and the appurtenances thereto under that certain Declaration of
> Condominium for Wynne's Ridge, a Condominium, recorded in Deed Book 2501, Page 240,
> Office of the Clerk of Superior Court of Cobb County, Georgia, as amended (said Declaration
> together with all exhibits thereto and amendments thereto and as may be amended from time to
> time hereafter being referred to as the "Declaration"). The interest herein conveyed includes,
> without limiting the generality of the foregoing, the undivided percentage interest in the common
> elements of Wynne's Ridge, a Condominium appurtenant to the Unit, as the same is specified in
> the Declaration.
>
> This conveyance is expressly made subject to the following matters: the aforesaid Declaration of
> Condominium for Wynne's Ridge, a Condominium, as may have been amended; Easement and
> Agreement recorded in Deed Book 2458, Page 127, aforesaid records; Service Access Agreement

with Marietta Cable T.V. dated September 4, 1981; Right-of-Way Deed to Cobb County, recorded in Deed Book 2347, Page 396, aforesaid records; Declaration of Cross Easements for Certain Common Facilities recorded in Deed Book2501, Page 229, aforesaid records; matters disclosed by the As-Built Survey for Wynne's Ridge, a Condominium by Planners and Engineers Collaborative dated December 22, 1981, as last revised; governmental laws, ordinances, rules and regulations including without limitation zoning restrictions; and the lien of ad valorem taxes not yet due and payable.

Address:        1306 Wynne's Ridge Circle
                Marietta, GA  30067


This Lis Pendens Notice has been filed and recorded as provided by law.

This 15th day of April, 2011.




Neil Ligon, Esq.
Georgia Bar No. 141663
Brian M. Annino, Esq.
Georgia Bar No. 841250
Annino & Ligon, LLC
707 Whitlock Ave, Suite H13
Marietta, GA 30064
Tel. (404) 934-5978
Fax (404) 631-6289

Attorneys for the Plaintiff

Lien Book 59 Pg 987
Jay C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.

Filed In Office Apr-20-2011 15:56:53
ID# 2011-0065775-CV
Page 1
*Jay C. Stephenson*
Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County,...

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| DANA L. CASELLI, | * | CIVIL ACTION FILE NUMBER |
| | * | 11-1-3631-33 |
| Plaintiff | | |
| vs. | * | |
| | * | |
| PHH MORTGAGE CORPORATION, | * | |
| d/b/a COLDWELL BANKER MORTGAGE, | | |
| a/k/a PHH MORTGAGE SERVICES, | * | |
| BANK OF AMERICA, N.A., PROMMIS | | |
| SOLUTIONS, LLC, and MCCALLA | * | |
| RAYMER, LLC | | |
| Defendants. | | |

## SHOW CAUSE AND RULE NISI ORDER

The above-styled case I set by Rule Nisi for hearing before the assigned Judge, Judge James G. Bodiford, on Monday, May 2nd, 2011 at 8:30 a.m. In the event the case is not reached by Judge Bodiford on that date, it is hereby ordered that each of the parties be and appear before Presiding Senior Judge Michael Stoddard of the Superior Court of Cobb County on the 2nd day of May, 2011, at 4:00 o'clock p.m., in Courtroom "M", 4th Floor, Cobb Superior Court South Building, to show cause, if any, why the prayers of the within Emergency Motion For Temporary Restraining Order should not be granted.

The question of whether there is an emergency is reserved for the Senior Judge presiding over this rule nisi.

SO ORDERED this ___19th___ day of ___April___, 2011.

_____
WATSON L. WHITE
SENIOR JUDGE, STATE OF GEORGIA
PRESIDING IN COBB SUPERIOR COURT

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

Filed In Office Apr-29-2011 15:55:12
ID# 2011-0071328-CV
Page 1

*Jay C. Stephenson* CW

Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County

DANA L. CASELLI

        Plaintiff,

vs.

PHH MORTGAGE CORPORATION,
etc., et al.

        Defendant.

CIVIL ACTION
CASE NO.: 11-1-3631-33

## AFFIDAVIT OF SERVICE

COMES NOW, BRUCE R. SMITH JR., a United States citizen and over the age of 18 years,

before the undersigned officer duly authorized to administer oaths, and, being sworn on oath,

deposes and states as follows:

1.

I served PHH MORTGAGE CORPORAITON dba COLDWELL, etc with the below-listed documents in this matter, in the below-described manner,

at 40 TECHNOLOGY PKWY S, 300, NORCROSS, GA 30092,

on April 20, 2011, at 1:15 PM:

SUMMONS/COMPLAINT/LIS PENDENS/RULE NISI

Said documents were served by handing to SARA CHEN, CSC Process Specialist.

2.

Ms. Chen is authorized to accept the above listed documents on behalf of Corporation Service Company the Registered Agent for PHH Mortgage Corporation.

BRUCE R. SMITH JR.
Attorneys' Personal Services, In

Sworn to and subscribed
before me this the 21st day
of April, 2011.

Notary Public

*[Notary Seal: DEBORAH A. DUCHON, NOTARY, EXPIRES NOV. 14, 2014, GEORGIA, PUBLIC, DEKALB COUNTY]*

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

Filed In Office Apr-29-2011 15:55:12
ID# 2011-0071329-CV
Page 1

*J. C. Stephenson Cyr*

Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County

DANA L. CASELLI

    Plaintiff,

vs.

PHH MORTGAGE CORPORATION,
etc., et al.

    Defendant.

CIVIL ACTION
CASE NO.: 11-1-3631-33

## AFFIDAVIT OF SERVICE

COMES NOW, BRUCE R. SMITH JR., a United States citizen and over the age of 18 years, before the undersigned officer duly authorized to administer oaths, and, being sworn on oath, deposes and states as follows:

1.

I served BANK OF AMERCIA CORPORATION, etc with the below-listed documents in this matter, in the below-described manner,

at 1201 PEACHTREE ST NE, ATLANTA, GA 30361,

on April 19, 2011, at 1:10 PM:

SUMMONS/COMPLAINT/LIS PENDENS/ORDER RULE NISI

Said documents were served by handing to SHAKINAH EDWARDS, CT Corp. Process Specialist.

2.

*Bruce R Smith*

BRUCE R. SMITH JR.
Attorneys' Personal Services, Ii

Sworn to and subscribed
before me this the 20th day
of April, 2011.

*Debra A. Duchin*
Notary Public

DEBORAH A. DUCHON
NOTARY
EXPIRES
GEORGIA
NOV. 14, 2014
PUBLIC
DEKALB COUNTY

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

Filed In Office Apr-29-2011 15:55:12
ID# 2011-0071330-CV
Page 1

*Jay C. Stephenson*

Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County

DANA L. CASELLI

          Plaintiff,

vs.

PHH MORTGAGE CORPORATION,
etc., et al.

          Defendant.

CIVIL ACTION
CASE NO.: 11-1-3631-33

## AFFIDAVIT OF SERVICE

COMES NOW, BRUCE R. SMITH JR., a United States citizen and over the age of 18 years,

before the undersigned officer duly authorized to administer oaths, and, being sworn on oath,

deposes and states as follows:

1.

I served MCCALLA RAYMER, LLC with the below-listed documents in this matter, in the below-described manner,

at 6 CONCOURSE PKWY, 3200, ATLANTA, GA 30328,

on April 21, 2011, at 1:40 PM:

SUMMONS/COMPLAINT

Said documents were served by handing to LISA ROSE, Partner.

2.

BRUCE R. SMITH JR.
Attorneys' Personal Services, I

Sworn to and subscribed
before me this the 22nd day
of April, 2011.

Notary Public

[Notary seal: DEBORAH A. DUCHON, NOTARY, GEORGIA, EXPIRES NOV. 14, 2014, PUBLIC, DEKALB COUNTY]

IN THE SUPERIOR COURT OF COBB COUNTY

STATE OF GEORGIA

Filed In Office Apr-29-2011 15:55:12
ID# 2011-0071331-CV
Page 1

*Jay C. Stephenson CJr*

Court Rule: www.cobbsuperiorcourtclerk.com
Jay C. Stephenson
Clerk of Superior Court Cobb County

DANA L. CASELLI

                Plaintiff,

vs.

PHH MORTGAGE CORPORATION,
etc., et al.

                Defendant.

CIVIL ACTION
CASE NO.: 11-1-3631-33

## AFFIDAVIT OF SERVICE

COMES NOW, BRUCE R. SMITH JR., a United States citizen and over the age of 18 years,

before the undersigned officer duly authorized to administer oaths, and, being sworn on oath,

deposes and states as follows:

1.

I served PROMMIS SOLUTIONS, LLC with the below-listed documents in this matter, in the below-described manner,

at 3675 CRESTWOOD PKWY, 350, DULUTH, GA 30096,

on April 20, 2011, at 1:45 PM:

SUMMONS/COMPLAINT/LIS PENDENS/ORDER AND RULE NISI

Said documents were served by handing to DARBY LUKASCHUS, Process Specialist.

2.

Ms. Lukaschus is authorized to accept the above listed documents on behalf of National Registered Agents, Inc. the Registered Agent for Prommis Solutions, LLC.

BRUCE R. SMITH JR.
Attorneys' Personal Services, L

Sworn to and subscribed
before me this the 21st day
of April, 2011.

Notary Public

DEBORAH A. DUCHON
NOTARY
EXPIRES
GEORGIA
NOV. 14, 2014
PUBLIC
DEKALB COUNTY

**EVIDENCE LIST**
IN THE SUPERIOR COURT FOR THE COUNTY OF COBB
STATE OF GEORGIA

Plaintiff / State _Dana L. Caselli_

vs

Defendant _PHH Mortgage Corporation_ _et al._

Submitting Party _plaintiff_

Submitting Attorney _Neil Ligon_

**Instructions:**
Enter only one party plaintiff and one party defendant.
Create separate list for each submitting party.

Case No. _11-1-31631-33_

Pleading No. _____

Type of Hearing _Non-Jury_

Date of Hearing _5/2/11_

Judge _C. Ingram Assisting_
Clerk- _Tricia Crawford_
Ctrp- _Marilyn Roe_

| EXH. NO. | DESCRIPTION |
|---|---|
| ✓ P-1 | Emails concerning loan modification |

Received this _____ day of _____ 20___.

Cont. _____

Form #3.5003

Court Rule: www.cobbsuperiorcourtclerk.com
Clerk of Superior Court Cobb County
Jay C. Stephenson
Filed In Office May-02-2011 16:50:25
ID# 2011-00072357-CV
Page 1

SECOND ORIGINAL

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

DANA L. CASELLI                        )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        CIVIL ACTION NO. _1-1-3631-33_
                                       )
PHH MORTGAGE CORPORATION,              )
d/b/a COLDWELL BANKER                  )
MORTGAGE, a/k/a PHH MORTGAGE           )
SERVICES, BANK OF AMERICA,             )
CORPORATION d/b/a BANK OF              )
AMERICA, N.A., PROMMIS                 )
SOLUTIONS, LLC, and                    )
McCALLA RAYMER, LLC                    )
                                       )
        Defendants.                    )

SUMMONS

TO THE ABOVE NAMED DEFENDANTS:

        You are hereby summoned and required to file with the Clerk of said court and serve
upon the Plaintiff's attorney, whose name and address is:

                Brian M. Annino, Esq.
                Neil C. Ligon, Esq.
                Annino & Ligon, LLC
                707 Whitlock Ave., Suite H-13
                Marietta, GA  30064

an answer to the complaint which is herewith served upon you, within 30 days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint.

This 15th day of April, 2011.

JAY C. STEPHENSON,
Clerk of Superior Court

By:_____
(Clerk)

**SECOND ORIGINAL**

IN THE SUPERIOR COURT OF COBB COUNTY
STATE OF GEORGIA

DANA L. CASELLI                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CIVIL ACTION NO. 11-1-3631-33
                                         )
                                         )
PHH MORTGAGE CORPORATION,                )
d/b/a COLDWELL BANKER                     )
MORTGAGE, a/k/a PHH MORTGAGE             )
SERVICES, BANK OF AMERICA                )
CORPORATION d/b/a BANK OF                )
AMERICA, N.A., PROMMIS                   )
SOLUTIONS, LLC, and                      )
McCALLA RAYMER, LLC                      )
                                         )
        Defendants.                      )

**COMPLAINT TO ESTABLISH TITLE TO LAND FOR BREACH OF CONTRACT,
PROMISSORY ESTOPPEL, FRAUD, AND FOR TEMPORARY RESTRAINING
ORDER AND INTERLOCUTORY INJUNCTION**

INTRODUCTION

This action concerns title to real property ("Property") located in Cobb County, Georgia,

being more fully described on Exhibit "A," attached hereto and incorporated herein by reference.

PARTIES, JURISDICTION, AND VENUE

1. This matter concerns title to the Property located in Cobb County, Georgia. Therefore;

   this Court has the exclusive subject matter jurisdiction to hear this matter in accordance

   with O.C.G.A. § 44-2-60.

2. Venue is proper as to all Defendants in accordance with GA CONST Art. 6 § 2, ¶ II.

1

3. Plaintiff Dana Caselli ("Plaintiff") resides at 1306 Wynnes Ridge Circle, Marietta, GA 30067. Plaintiff is a resident of Cobb County and voluntarily submits to the jurisdiction and venue of this Court.

4. Defendant PHH Mortgage Services d/b/a Coldwell Banker Mortgage, a/k/a PHH Mortgage Services ("Defendant PHH") is a foreign corporation conducting business in Georgia and, in accordance with O.C.G.A. § 14-2-1510, may be served through its registered agent: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA 30092. Upon service, Defendant PHH is subject to the jurisdiction and venue of this Court.

5. Defendant Bank of America Corporation, d/b/a Bank of America, N.A. ("Defendant BOA") is named herein solely for a junior lien interest it may hold in the property. Such lien interest may be a Security Deed in an amount not to exceed $10,000.00 dated August 4, 2006, and recorded on August 28, 2006, in Deed Book 14379, Page 2323 in the Cobb County Superior Court. Defendant BOA is a foreign corporation conducting business in Georgia, and, in accordance with O.C.G.A. § 14-2-1510, may be served through its registered agent: CT Corporation System/Shakinah Edwards, 1201 Peachtree Street NE, Atlanta, GA 30361. Upon service, Defendant BOA is subject to the jurisdiction and venue of this Court.

6. Defendant McCalla Raymer, LLC ("Defendant MR") is a Georgia limited liability company and may be served through its registered agent: Marty Stone, 6 Concourse Parkway, Suite 3200, Atlanta, GA 30328. Upon service, Defendant MR is subject to the jurisdiction and venue of this Court.

7. Defendant Prommis Solutions, LLC ("Defendant PS") is a Georgia limited liability company and may be served through its registered agent: National Registered Agents, Inc., 3675 Crestwood Parkway, Suite 350, Duluth, GA 30096. Upon service, Defendant PS is subject to the jurisdiction and venue of this Court.

8. Jurisdiction and venue are therefore proper in this Court.

FACTS

9. Plaintiff re-alleges and incorporates by reference paragraphs 1-8 above as if fully set forth in this Count.

10. On or about July 29, 2005, Plaintiff executed a Promissory Note and Deed to Secure Debt in favor of Coldwell Banker Mortgage. Plaintiff is informed and believes that Defendant PHH was doing business as Coldwell Banker Mortgage at such time. The Deed to Secure Debt was recorded on August 25, 2005 in Deed Book 14209, Page 64 in the Cobb County Superior Court. The Deed to Secure Debt is attached hereto as Exhibit "B" and incorporated herein by reference.

11. On March 16, 2009, Plaintiff lost her job, which substantially altered her financial position. As a result, Plaintiff deemed it appropriate to seek a loan modification and applied to Defendant PHH for a loan modification in April of 2009.

12. Defendant PHH offered Plaintiff a Home Affordable Modification Trial Period Plan ("Trial Plan") effective as of September 1, 2009.

13. Plaintiff completed the necessary Trial Plan documentation on or about August 17, 2009 and transmitted same along with first payment to Defendant PHH. The completed and signed documentation and proof of first payment is attached hereto as Exhibit "C" and incorporated herein by reference.

3

14. Plaintiff continued to make her scheduled Trial Plan payments throughout the term set forth in the Trial Plan contract.

15. Plaintiff did not receive any explicit written confirmation that she had entered the Trial Plan until March 8, 2010 (well after she had already completed the Trial Plan). On March 8, 2010, she received a letter that was dated January 19, 2010, and which congratulated her on her acceptance into the Trial Plan. This letter is attached hereto as Exhibit "D" and incorporated herein by reference.

16. On November 17, 2009, Plaintiff received notification from Defendant PHH indicating that she was eligible for a Home Affordable Modification ("Modification") so long as she completed the Trial Plan. By its terms, the Modification amended certain terms of the Deed to Secure Debt, but where not specifically amended, the terms of the Deed to Secure Debt remain in place.

17. Plaintiff executed the Modification before a notary at a local Bank of America branch and transmitted two copies of the Modification to PHH for delivery on November 30, 2009. An unsigned copy of the Modification contract, with the UPS proof of delivery, is attached as Exhibit "E," also incorporated herein by reference. An affidavit from Plaintiff stating that signed copies of this document were transmitted in this UPS package, is attached as Exhibit "F," and also incorporated herein by reference.

18. Plaintiff properly made her required Trial Plan and Modification payments from the date her Trial Plan commenced through the December 2010 payment under the Modification, as is demonstrated by the proof of her payments and tracking information for such payments attached hereto as Exhibit "G," also incorporated herein by reference.

19. On December 31, 2009, Defendant PHH processed Plaintiff's scheduled January Modification payment.

20. In February 2010, when Plaintiff, expecting to receive a fully-executed copy of her Modification, still had not received same from Defendant PHH, she contacted them. When she spoke with them, a Defendant PHH representative instructed her that the process customarily took a long time, frequently 60 to 90 days, if not longer.

21. Plaintiff contacted Defendant PHH again in June 2010, and a Defendant PHH representative advised her of no additional information regarding transmittal of the Modification and advised Plaintiff to "check back" in two weeks.

22. Defendant PHH processed her scheduled June Modification payments on May 27, 2010, and her scheduled July Modification payment on June 18, 2010.

23. Plaintiff continued to submit her payments as scheduled in the Modification, and Defendant PHH continued to accept her payments. Throughout the months of October and November, Plaintiff continued to make telephone calls in an attempt to reach someone to learn why she had not received her copy of the signed Modification and to confirm that no problems had arisen with her Modification. These calls frequently lasted for prolonged periods of time, often in excess of an hour, but never resulted in her speaking with a representative who could address her concerns.

24. Defendant PHH processed her scheduled October Modification payment on September 27, 2010, and processed her scheduled November Modification Payment on October 29, 2010.

25. In mid-November, Plaintiff received a Notice of Intention to Foreclose from Defendant PHH. Plaintiff immediately called Defendant PHH's Loss Mitigation department to

5

determine what was happening. The representative with whom she spoke advised her to "disregard the notice," and told her that he was escalating her case and someone would get in touch within the next 10-14 days.

26. By letter dated November 30, 2010, attached as Exhibit "H" and incorporated herein by reference, Defendant PHH advised Plaintiff that her scheduled December 2010 payment dated November 22, 2010, was being returned because "insufficient amount to clear default" [sic], and incorrectly advised her that her loan was due for the September 1, 2009 payment.

27. Upon receipt of the above referenced letter in December of 2010, Plaintiff promptly called Defendant PHH to determine the status of the loan. The representative with whom she spoke advised her that any payments she tried to make would be intercepted by Cash Management Department and returned. Defendant PHH representative advised that she would escalate the case to her supervisor, and Plaintiff informed her that escalation had proven useless in the past.

28. On December 20, 2010, Plaintiff again contacted Defendant PHH and was told by the representative with whom she spoke that Defendant PHH just had to reprint the Modification documents with new dates, and that the representative would escalate her matter to the closing department. When Plaintiff asked to continue sending payments, she was informed that the payments would simply be returned. The representative told Plaintiff that she should look for her reprinted documents in seven days.

29. Plaintiff called on December 23, 2010, and was again told that the representative with whom she spoke could not assist her, but that her matter would be escalated.

30. By February of 2011, Plaintiff was receiving collection calls from third party collection agencies regarding her account.

31. After Plaintiff's further fruitless efforts in communicating with Defendant PHH to determine why her payments were no longer being accepted, Plaintiff contacted the Making Home Affordable Help Desk, a department of the federal government's consumer protection agency which was under the supervision of the Department of Treasury and the Department of Housing and Urban Development ("MHA Help").

32. On February 7, 2011, Plaintiff participated in a 90 minute conference call with Defendant PHH and a MHA Help representative by the name of Angela Usturoi. After being put on hold for 15 minutes while Defendant PHH's representative searched for a representative, the supervisor, who Plaintiff believes was named Ms. Harris, finally joined the call but the line was dropped prior to any discussions taking place.

33. MHA Help representatives indicated to Plaintiff that they were escalating matter and informed Plaintiff that Defendant PHH would have to respond to MHA Help's inquiries into the matter within 30 days.

34. Plaintiff contacted MHA Help on February 16th, 21st and 23rd, 2011, but Defendant PHH had still not submitted a response to MHA Help's inquiries into the status of the Modification.

35. In March 2011, MHA Help representatives indicated to Plaintiff that they had twice submitted her case to the United States Treasury Department.

36. The matter was ultimately referred to Defendants MR and PS for foreclosure, despite the fact that Plaintiff had made timely payments pursuant to the Modification.

7

37. On March 28, 2011, Plaintiff hand-delivered to Defendant MR and Defendant PS copies of all of her documentation in order to demonstrate to them the issues which continued to exist around who was the rightful title-holder of the property, and to have the property removed from its scheduled sale on May 3, 2011. Neither Defendant MR nor Defendant PS responded to Plaintiff's in-person request.

38. By correspondence dated April 8, 2011 and April 11, 2011, Plaintiff's counsel set forth Plaintiff's concerns to Defendants PS and MR and requested a postponement of the May 3, 2011 foreclosure date.    By electronic mail correspondence dated April 14, 2011 and received at 10:07 AM, an attorney for Defendant MR generally indicated that the foreclosure sale date would not be postponed.

## COUNT ONE – TITLE TO LAND *(Quia Timet)*

39. Plaintiff re-alleges and incorporates by reference paragraphs 1-38 above as if fully set forth in this Count.

40. O.C.G.A. § 23-3-40 provides that "The proceeding quia timet is sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complaint's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection."

41. O.C.G.A. § 23-3-41 states: "[i]n all proceedings quia timet or proceedings to remove clouds upon titles to real estate, if a proper case is made, the relief sought shall be granted to any complainant irrespective of whether the invalidity of the instrument sought to be

8

canceled appears upon the face of the instrument *or whether the invalidity appears or arises solely from facts outside of the instrument.*" (emphasis added)

42. O.C.G.A. § 23-3-42 provides that "[a]n instrument which, by itself or in connection with proof of possession by a former occupant or other extrinsic facts, gives the claimant thereunder an apparent right in or to the property may constitute a cloud on the title of the true owner; and the latter may proceed to have the same removed upon proof:

(1) That he cannot immediately or effectually maintain or protect his rights by any other course of proceeding open to him;

(2) That the instrument sought to be canceled is such as would operate to throw a cloud or suspicion upon his title and might be vexatiously or injuriously used against him;

(3) That he either suffers some present injury by reason of the hostile claim of right, or though the claim has not been asserted adversely or aggressively, he has reason to apprehend that the evidence upon which he relies to impeach or invalidate the same as a claim upon his title may be lost or impaired by lapse of time.

43. Plaintiff contends that since Defendant PHH has not obtained a Deed Under Power of Sale and that she has possession of the Property, she still has rights to the Property.

44. Plaintiff further alleges that, Defendants' actions moving forward with the May 3, 2011 foreclosure, and issue a Deed Under Power to the prevailing bidder, is improper, creates a cloud upon the title, that the Plaintiff cannot immediately or otherwise protect her rights and obtain a decree in equity canceling title other than through this action and that she has reason to believe that her rights may be impaired by the lapse of time.

45. Plaintiff contends that based upon the above and foregoing, this Court (as court in equity) should enter a decree postponing the May 3, 2011 foreclosure sale, setting aside any

Deed Under Power issued regarding the Property, issuing a decree that the Modification is valid and of full effect, and/or providing a manner and time in which the Plaintiff may reinstate the Modification.

46. O.C.G.A. § 23-3-41(b) provides that the costs of this proceeding should be taxed to the litigants in the discretion of the Court.

47. Plaintiff contends that the costs of the proceeding should be taxed to the Defendants.

## COUNT TWO – BREACH OF CONTRACT (DEFENDANT PHH)

48. Plaintiff re-alleges and incorporates by reference paragraphs 1-47 above as if fully set forth in this Count.

49. Plaintiff shows this Court that because Defendant PHH, directly and through its agents, (a) improperly refused to accept payments under the Modification beginning in December of 2010, (b) ignored the terms of the Modification, (c) demanded payments in accordance with the prior loan agreement which had been amended by the Modification, and (d) provided misleading statements to Plaintiff regarding the status of her account, it breached the explicit provisions of the Modification.

50. Furthermore, every contract "implies a covenant of good faith and fair dealing in the performance of the terms of the agreement." Wireless MD, Inc. v. Healthcare.com Corp., 271 Ga.App 461, 610 S.E. 352 (2005).

51. Plaintiff further shows this Court that implied duty of good faith and fair dealing requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. Ihesiaba v. Pelletier, 214 Ga.App. 721, 448 S.E.2d 920 (1994).

10

52. Plaintiff shows that the Defendant PHH breached the Modification, a contract, by failing to conform with the explicit terms of the Modification and the implied duty of good faith and fair dealing.

53. Plaintiff shows that as a result of the breach of contract, the Court should issue an order compelling Defendant PHH to specifically perform under the Modification.

## COUNT THREE – PROMISSORY ESTOPPEL (DEFENDANT PHH)

54. Plaintiff re-alleges and incorporates by reference paragraphs 1-53 above as if fully set forth in this Count.

55. Plaintiff shows that, prior to her receipt of written confirmation from Defendant PHH, the Trial Period was still recognized by both parties as valid simply through Defendant PHH's cashing of the Trial Period required monthly payments.

56. Plaintiff shows that Defendant PHH received payments from Plaintiff in a manner as was required under the Modification and continued to cash Plaintiff's checks while simultaneously advising her that she would receive a signed copy of the Modification and inferring to her that no further action was necessary regarding the Modification.

57. Even after Plaintiff contacted Defendant PHH about the returned December payment and the accompanying demand for $11,373.31 in Defendant PHH's letter dated November 30, 2010, Defendant PHH advised Plaintiff to disregard the letter because the account was under review.

11

58. The promises made by Defendant PHH and the pattern and practice established during the Trial Plan and Modification terms, were such as to cause Defendant PHH to reasonably expect or induce action or inaction on the part of the Plaintiff.

59. Plaintiff relied to her detriment on the belief that her monthly payment to Defendant PHH pursuant to the Modification was sufficient to fulfill her obligations to Defendant PHH and to allow her to maintain title to the property.

60. The promises made by Defendant PHH are such as to cause injustice if the promises are not enforced.

61. Based on the above and foregoing, the promises to Plaintiff should be enforced, specifically, that she would be able to make Modification payments to Defendant PHH without being in default under the prior loan agreement and without being in imminent danger of foreclosure.

## COUNT FOUR – WRONGFUL FORECLOSURE

62. Plaintiff re-alleges and incorporates by reference paragraphs 1-61 above as if fully set forth in this Count.

63. Plaintiff shows that when a power of sale is exercised, the foreclosing party is required to fairly exercise such power. O.C.G.A. § 23-2-114.

64. Plaintiff contends that the Defendants have failed to fairly exercise the power of sale.

65. Plaintiff shows that the lack of good faith in the process warrants the Court to set aside the foreclosure.

## COUNT FIVE – FRAUD (DEFENDANT PHH)

12

66. Plaintiff re-alleges and incorporates by reference paragraphs 1-65 above as if fully set forth in this Count.

67. Plaintiff shows that Defendant PHH, directly and through its agents, made representations to the Plaintiff regarding the status and treatment of the Modification.

68. Plaintiff shows that the representations were either false when made or were made without a present intention to perform under the Modification.

69. Plaintiff shows that the representations were reasonably relied upon by the Plaintiff, to her detriment.

70. Plaintiff shows that the representations were made with the intent to induce Plaintiff to refrain from acting.

71. Plaintiff shows that the representations have caused damage to the Plaintiff, including but not limited to, the costs and expenses of this action, the loss of significant time in attempting to resolve this matter, and other damages which may be evidenced by Plaintiff.

72. Plaintiff is entitled to recover the damages suffered as a result of the Defendant PHH's fraud.

## COUNT SIX – ATTORNEY'S FEES

73. Plaintiff re-alleges and incorporates by reference paragraphs 1-72 above as if fully set forth in this Count.

74. Plaintiff shows that the conduct of the Defendants, directly and through their agents, constitutes intentional torts, invoking a specie of bad faith.

75. Plaintiff further shows that the conduct of the Defendants was in bad faith, caused the Plaintiff unnecessary trouble and expenses, and was stubbornly litigious.

76. Plaintiff shows that she should recover the reasonable costs of the prosecution of this action, including attorney's fees and expenses of litigation.

## COUNT SEVEN -- PUNITIVE DAMAGES

77. Plaintiff re-alleges and incorporates by reference paragraphs 1-76 above as if fully set forth in this Count.

78. Plaintiff shows that the conduct of Defendants, directly and through their agents, is reprehensible and shows willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

79. Defendants should be penalized, punished and deterred from such conduct in the future by an award of punitive damages.

## TEMPORARY RESTRAINING ORDER

80. Plaintiff re-alleges and incorporates by reference paragraphs 1-79 above as if fully set forth in this Count.

81. Plaintiff shows that the Property is currently listed for a May 3, 2011 foreclosure sale by Defendant MR and there exists a substantial likelihood that Defendant MR will sell the Property upon finding a qualified purchaser. A copy of World Wide Web page depicting the Property listing is attached hereto as Exhibit "I" and incorporated herein by reference.

82. Plaintiff shows that Plaintiff has put Defendant MR and Defendant PHH on notice of her claims to the property on multiple occasions and sought a postponement of the foreclosure sale date, yet Defendant MR and Defendant PHH have refused to remove the property from the foreclosure sale until this dispute can be resolved.

14

83. Plaintiff's efforts to provide Defendant MR, Defendant PS, and Defendant PHH with documentation supporting her position has delayed the filing of this action.

84. Plaintiff shows that if the Court does not preserve the status quo, Plaintiff faces a substantial likelihood of irreparable harm, specifically that the Defendants will follow through with the foreclosure sale and thereafter commence eviction proceedings.

85. This Court should exercise its discretion and enter a temporary restraining order prohibiting any transfer of the Property by the Defendant PHH and Defendant MR. This injunction should remain in effect through the pendency of the case.

## INTERLOCUTORY INJUNCTION

86. Plaintiff re-alleges and incorporates by reference paragraphs 1-85 above as if fully set forth in this Count.

87. Plaintiff shows that the Property is currently listed for sale by Defendant MR and there exists a substantial likelihood that Defendant MR will sell the Property upon finding a qualified purchaser.

88. Plaintiff shows that if the Court does not preserve the status quo, Plaintiff faces a substantial likelihood of irreparable harm.

89. This Court should exercise its discretion and enter an interlocutory injunction prohibiting any transfer of the Property by the Defendants. This injunction should remain in effect through the pendency of the case.

WHEREFORE, Plaintiff prays for the following:

15

(1) that the Court take jurisdiction over this matter;

(2) that the appropriate notice and process issue;

(3) that an immediate temporary restraining order be issued to prevent the sale of the property at the foreclosure sale on May 3, 2011;

(4) that an interlocutory injunction be issued prohibiting transfer of the Property by the Defendants;

(5) that Plaintiff's prayers and counts in equity herein be granted by the Court;

(6) that a jury trial be held on the non-equity matters so triable; and

(7) for such other and further relief as is just and equitable.

This 15th day of April, 2011.

Neil Ligon, Esq.
Georgia Bar No. 141663
Brian M. Annino, Esq.
Georgia Bar No. 841250
Annino & Ligon, LLC
707 Whitlock Ave, Suite H13
Marietta, GA 30064
Tel. (404) 934-5978
Fax (770) 428-0761

Attorneys for the Plaintiff

VERIFICATION

STATE OF GEORGIA

COUNTY OF COBB

Personally appeared before me, an officer duly authorized by law to administer oaths, Dana L. Caselli, who after being duly sown, states that the facts contained in the within and foregoing Complaint are true and correct to the best of her knowledge information and belief.

_____

Dana L. Caselli
Affiant

SUBSRIBED AND SWORN TO BEFORE ME, on the 15th day of April, 2011, to certify which witness my and official seal.

_____

Notary Public/Official
My commission expires: 2-14-2012

17

EXHIBIT "A"

## EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 922 of the 17th District, 2nd Section, Cobb County, Georgia, and being identified and depicted as Unit No. 1306 hereinafter sometimes referred to as the "Unit") of Wynne's Ridge, a Condominium, together with all right, title and interest of Grantor in said Unit and the appurtenances thereto under that Certain Declaration of Condominium for Wynne's Ridge, a Condominium, recorded in Deed Book 2501, Page 240, Office of the Clerk of Superior Court of Cobb County, Georgia, as amended (said Declaration together with all exhibits thereto and amendments thereto and as may be amended from time to time, hereinafter being referred to as the "Declaration"). The interest herein conveyed includes, without limiting the generality of the foregoing, the undivided percentage interest in the common elements of Wynne's Ridge, a Condominium appurtenant to the Unit, as the same is specified in the Declaration.

This conveyance is expressly made subject to the following matters: the aforesaid Declaration of Condominium for Wynne's Ridge, a Condominium, as may have been amended; Easement and Agreement recorded 2456, Page 127, aforesaid records; Service Access Agreement with Marietta Cable T.V. dated September 4, 1981; Right-of-Way Deed to Cobb County, recorded in Deed Book 2347, Page 396, aforesaid records; Declaration of Cross Easements for Certain Common Facilities, recorded in Deed Book 2501, Page 229, aforesaid records; matters disclosed by the As-Built Survey for Wynne's Ridge, a Condominium by Planners and Engineers Collaborative dated December 22, 1981, as last revised; governmental laws, ordinances, rules and regulations including without limitation zoning restrictions; and the lien of ad valorem taxes not yet due and payable.

Address:    1306 Wynnes Ridge Circle
Marietta, GA 30067

18

EXHIBIT "B"

Return To

Coldwell Banker Mortgage
2001 Bishops Gate Boulevard
Mount Laurel, NJ 08054

Prepared By:

Stacey Geller, Coldwell
Banker Mortgage
3000 Leadenhall Road Mount
Laurel, NJ 08054

0538/99

Deed Book 14209 Pg 546
Filed and Recorded 09/06/2005 04:27pm
2005-0130595
Georgia Intangible Tax Paid $302.50

Ja C. Stephenson
Clerk of Superior Court Cobb Cty. Ga.
By C. Stephenson

─────── [Space Above This Line For Recording Data] ───────

SECURITY DEED    Loan #: 0031237938

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated July 29, 2005 together with all Riders to this document.
(B) "Borrower" is Dana L Caxelli, AN UNMARRIED WOMAN

Borrower is the grantor under this Security Instrument.
(C) "Lender" is Coldwell Banker Mortgage

Lender is a Corporation
organized and existing under the laws of New Jersey

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3011 1/01

-6(GA)-00060.03

VMP MORTGAGE FORMS - (800)521-7291

Original

Deed Book 14209 Pg 65

Lender's address is 3000 Leadenhall Road Mount Laurel, NJ 08054

Lender is the grantee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated July 27, 2005
The Note states that Borrower owes Lender One Hundred Seventeen Thousand Three
hundred Twenty-Five Dollars and Zero Cents
(U.S. $117,325.00                     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1st, 2035.
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider   [X] Condominium Rider            [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider        [X] Other(s) [specify]
WAIVER OF BORROWER'S RIGHTS; CLOSING ATTORNEY'S AFFIDAVIT;

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

GA-Single Family                               Page 2 of 18                    Form 3011 1/01

Original

(F) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property, located in the

COUNTY                                    of                        COBB
[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                          which currently has the address of
1306 WINDES RIDGE CIRCLE                                                              [Street]
MARIETTA                                     [City] , Georgia 30067          [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows.

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

MEGAN (something)                          Page 2 of 14                          Form 3011 1/01

Original

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately, prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rent on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Original

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Original

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Form 3011   1/01

Original

Deed Book 14209 Pg 73

the

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

Page 7 of 14

Form 3011 1/01

Original

Bk-15 Book 14209 Pg   71

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

-6641 0001-02

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given. Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Deed Book 14269 Pg 73

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

GEORGIA-Single Family                                          Form 3011 1/01

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Security Instrument, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. These conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials _____

Form 3011  1/01

Page 11 of 11

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Deed Book 14289 Pg 77

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
Dafна L Cavelli          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

STATE OF GEORGIA, Cobb                    County ss:

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public, Cobb           County
State of Georgia

Page 14 of 14                        Form 3011  1/01