# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DANA L. CASELLI,                :
                                :
    Plaintiff,              :
                                :
v.                              :  CIVIL ACTION NO.
                                :  1:11-CV-2418-RWS
PHH MORTGAGE CORPORATION        :
d/b/a CALDWELL BANKER           :
MORTGAGE, a/k/a PHH             :
MORTGAGE SERVICES,              :
    Defendant.              :

## **ORDER**

This case comes before the Court on Plaintiff's Motion for Temporary Restraining Order [2], Defendant's Motion to Dismiss the Amended Complaint [7], Plaintiff's Second Motion for Preliminary Injunction [9], Plaintiff's First Motion to Deposit Funds into the Registry of the Court [13], Defendant's Motion to Strike the Plaintiff's Supplemental Response [20], and Plaintiff's Motion for Leave to File her Supplemental Response [22]. After a review of the record, the Court enters the following Order.

## **I. Factual Background**[1]

---

[1]The following facts are taken from the Amended Complaint and any appended exhibits thereto.

On July 29, 2005, Plaintiff executed a promissory note and deed to secure debt in favor of Coldwell Bank Mortgage, which granted a secured interest in Plaintiff's property at 1306 Wynnes Ridge Cir., Marietta, GA 30067. Defendant PHH was doing business as Coldwell Banker Mortgage when the note and deed were executed.

On March 16, 2009, Plaintiff lost her job and applied to PHH for a loan modification in April 2009. On September 1, 2009, PHH offered Plaintiff a Home Affordable Modification Trial Period Plan. That Plan stated in relevant part:

> If I am in compliance with this Trial Period Plan ("the Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender <u>will</u> provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."
>         . . .
> 2. E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and <u>will not be deemed waiver</u> of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my default under the Loan Documents.
>
> F. If prior to the Modification Effective Date, (i) <u>the Lender does not provide my a fully executed copy of this Plan and the</u>

2

>   Modification Agreement; (ii) I have not made the Trial Period
>   payments under Section 2 of this Plan; or (iii) the Lender
>   determines that my representations in Section 1 are no longer true
>   and correct, the <u>Loan Documents will not be modified and this
>   Plan will terminate</u>. In this event, the Lender will have all of the
>   rights and remedies provided by the Loan Documents, and any
>   payment I make under this Plan shall be applied to amounts I owe
>   under the Loan Documents and shall not be refunded to me . . .

Dkt. No. [26-1] at 1-2 (emphasis added). Plaintiff completed the Plan documents on August 17, 2009 and transmitted her signed documentation along with her first Plan payment on that date.

In November 2009, Plaintiff received a letter with an attached modification agreement from PHH. That letter stated:

> Congratulations! You are eligible for a Home Affordable
> Modification. As previously described, if you comply with the
> terms of the Home Affordable Modification Trial Period Plan, we
> <u>will</u> modify your mortgage loan and waive all prior late charges
> that remain unpaid. The enclosed Home Affordable Modification
> Agreement ("Modification Agreement") reflects the proposed
> terms of your modified mortgage.

Dkt. No. [26-1] at 12 (emphasis added). The letter went on to state that to accept the offer she had to sign and return the modification agreements and continue to make all Plan payments on time. The letter was also signed by "Marc J. Hinkle, VP, Servicing Manager."

The enclosed modification agreement contained the following relevant

3

AO 72A
(Rev.8/82)

terms:

> 2. **Acknowledgments and Preconditions of Modification**: I understand and acknowledge that:
>
> . . .
>
> B. I understand that the Loan Documents <u>will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender</u>, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. . . .
>
> . . .
>
> 3. **The Modification** . . .
>
> A. The new maturity date will be 10/01/2045.
>
> B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $114,536.39 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. <u>I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement</u>.

Dkt. No. [26-1] at 15 (emphasis added).

Plaintiff executed the modification agreement on November 30, 2009. After no response about her modification agreement, Plaintiff called PHH in

4

February 2010 to ask about her agreement. The PHH representative told her that these things typically took between 60 to 90 days, if not longer. Plaintiff called again in June 2010 and was told that the representative did not have an update on her loan and to call back in two weeks.

In October and November 2010, Plaintiff continued to call PHH to inquire about her modification. These calls typically lasted over an hour and provided no information. Despite no response, Plaintiff continued to pay, and PHH continued to accept and process, her plan payments.

In mid-November, Plaintiff received a Notice of Intention of Foreclosure from PHH. Plaintiff immediately called PHH, and a representative told her: to "disregard the notice," that he would escalate Plaintiff's file, and that someone from PHH would contact her within 10-14 days.

On November 30, 2010, PHH sent a letter which advised the Plaintiff that her December 2010 payment was being returned as it was insufficient to clear default, and she was advised that her loan was due as of September 1, 2010. Plaintiff then called PHH and was again told to disregard the letter as her account was under review, but she was told that any payments she made would be returned to her.

5

On December 20, 2010, Plaintiff spoke to a PHH representative who told her that PHH just needed to reprint the modification documents with new dates and to look for those new documents within seven days. However, she never received new documents. Plaintiff then called the federal Making Homes Affordable Help Desk and also obtained no resolution.

In March 2011, the matter was referred for foreclosure. Plaintiff and her counsel attempted to postpone the foreclosure sale due to the modification, but she was told on April 14, 2011 that her May 2, 2011 foreclosure sale would not be delayed. Plaintiff filed suit the next day. The Defendant now moves to dismiss all of Plaintiff's claims.

## II. Motion to Supplement and Motion to Strike

Plaintiff moves this Court to supplement her Motion for Opposition as the Defendant has sent her another letter which references her "HAMP trial period and modification." The document essentially encourages the Plaintiff to use direct deposit for her payments to PHH. Plaintiff argues that this letter is further evidence that the Defendant has waived any requirement to sign the modification as it continues to treat Plaintiff as if she has one.

However, this is a motion to dismiss. Thus, the Court is limited to the

pleadings and exhibits attached thereto–not to any additional evidence. If Plaintiff had wished to include this evidence, the proper procedure would have been to amend her complaint. The Court also notes that this is not extrinsic evidence which is properly considered on a motion to dismiss as the letter is not referenced in the amended complaint. See Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (stating that a Court is to limit "its consideration to the pleadings and exhibits attached thereto" for a motion to dismiss); Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A] document central to the complaint that [a party] appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.") (emphasis added). Therefore, Plaintiff's Motion to Supplement [19-1] is **DENIED** and Defendant's Motion to Strike [20] is **GRANTED**.

### III. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct.

AO 72A
(Rev.8/82)

1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### A. Quia Timet

Defendant first moves to dismiss Plaintiff's claim to quiet title. O.C.G.A. § 23-3-40 states:

8

> The proceeding quia timet is sustained in equity for the purpose of causing to be delivered and canceled any <u>instrument</u> which has answered the object of its creation or any forged or other iniquitous <u>deed</u> or <u>other writing</u> which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects him to future liability or present annoyance, and the cancellation of which is necessary to his perfect protection.

O.C.G.A. § 23-3-40 (emphasis added). Defendant argues that because it has not yet foreclosed on the property, and because Plaintiff admits through her pleadings that she needed the modification because she could no longer afford her prior mortgage, Plaintiff has essentially conceded that there are no security interests which are not properly attached to the property and all controlling security interests were signed by the Plaintiff. This Court agrees.

Plaintiff argues that because Defendant has indicated an intent to eventually foreclose, Plaintiff should be able to seek relief under qui timet to remove the cloud of potential foreclosure proceedings. But, the statute expressly requires that there be an "instrument" or "deed" or "other writing" to cancel. See WMW, Inc. v. Am. Honda Motor Co., 714 S.E.2d 689, 690 (Ga. Ct. App. 2011) ("the 'golden rule' of statutory construction . . . requires that we follow the literal language of the statute unless doing so produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant

9

something else. It is also a fundamental rule of statutory construction that where the language of a statute is plain and unambiguous, the terms used therein should be given their common and ordinary meaning.") As there is not an instrument or written document which has arisen out of a foreclosure sale to cloud the title–because the foreclosure sale has not occurred–Plaintiff's quiet title count is **DISMISSED**. See Am. Cmpl., Dkt. No. [1-3] at 49, ¶ 47 ("PHH has not obtained a Deed Under Power of Sale").

### B. Breach of Contract

Defendant next moves to dismiss Plaintiff's breach of contract claim. The essential elements of a valid contract are a subject matter, a consideration, and the mutual assent of the parties as to all terms of the agreement. Lamb v. Decatur Fed. Sav. & Loan Assoc., 411 S.E.2d 527, 529 (Ga. Ct. App. 1991). Mutual assent exists where the offer and acceptance show a "meeting of the minds" of the parties. Id.

#### 1. Consideration

Defendant first argues the modification cannot be valid because it is not supported by consideration. However, the Court finds that the modification does offer a benefit to the Defendant which was not found in the initial loan–the

10

ability to charge interest on any outstanding, unpaid interest. Modification Agreement, Dkt. No. [26-1] at 15 ("I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement."). Therefore, the supposed modification is not invalid for want of consideration.

### 2. Mutual Assent of the Parties

Second, the Defendant argues that because PHH did not return a signed, executed copy of the modification to the Plaintiff that the modification is not operative. The Court finds that for this reason the proposed modification is not binding.

Both the Plan and the proposed modification clearly state that the modification would not become binding unless and until the lender returned a fully executed copy of the modification to the Plaintiff. Plaintiff pleads that this was not done. Thus, an expressed condition of the proposed modification was never fulfilled, and the parties never mutually assented to the modification's terms. See Hunt v. Thomas, 675 S.E.2d 256, 260 (Ga. Ct. App. 2009) ("A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party. Until compliance with this condition

11

precedent the contract is not enforceable."). Therefore, the Court finds that no modification occurred and Plaintiff's loan continues to be governed by the original terms.

As well, it is worth noting that the Defendant's letter stating that if the Plaintiff complies "with the terms of the Home Affordable Modification Trial Period Plan, [PHH] will modify your mortgage loan and waive all prior late charges that remain unpaid" does not change this analysis. PHH's statement was immediately followed by a statement that "[t]he enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage," and the modification agreement clearly included the condition precedent.

### 3. Waiver

In response, the Plaintiff argues that the Defendant has waived any condition by acting in conformance with the modification by accepting Plaintiff's plan payments through November 2010. "It is well recognized that a party to a contract may waive contractual provisions for his benefit." AAF-McQuay, Inc. v. Willis, 707 S.E.2d 508, 520 (Ga. Ct. App. 2011). "A waiver may be established even though the acts, conduct or declarations are insufficient

12

to establish an estoppel. Ordinarily, a waiver operates to preclude a subsequent assertion of the right waived or any claim based thereon." Id.

Here, the Court finds that the Defendant's acceptance of Plaintiff's funds does not operate as a waiver because, as Plaintiff agreed in signing the Plan, "[w]hen the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and <u>will not be deemed waiver</u> of, the acceleration of the loan or foreclosure action." Dkt. No. [26-1] at 2. Because Plaintiff expressly agreed that Defendant's payment acceptance could not work as a waiver, Plaintiff's breach of contract claim is **DISMISSED**.[2]

### C. Promissory Estoppel

The Defendant also seeks to dismiss Plaintiff's promissory estoppel claim. A successful claim of promissory estoppel requires Plaintiff to establish:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, foregoing, or rendering a valuable right.

Sierra Craft, Inc. v. T.D. Farrell Constr., Inc., 638 S.E.2d 815, 820 (Ga. Ct.

---

[2]Because the Court has found that a modification did not exist for lack of mutual consent, the Court declines to also decide whether the modification violated the Statute of Frauds.

13

App. 2007) (quoting Rental Equip. Grp. Inc v. MACI, LLC, 587 S.E.2d 364, 367 (Ga. Ct. App. 2003)). The doctrine only applies to "promise[s] which the promisor should reasonably expect to induce action or forbearance on the part of the promisee." O.C.G.A. § 13-3-44. Such a promise, however, "must be of such a character as to be capable of enforcement against the party making it, as otherwise neither party will be bound." McMurray v. Bateman, 144 S.E.2d 345, 353 (Ga. 1965) (quoting McCaw Mfg. Co. v. Felder, 41 S.E. 664, 666 (Ga. 1902)).

The Court finds that Plaintiff has not relied to her detriment as Plaintiff actually benefitted from PHH's willingness to accept reduced payments and allow her to remain in her home for over one year. See Adams v. JP Morgan Chase Bank, 1:10-cv-4226, 2011 WL 2532925 (N.D. Ga. 2011) (finding that allowing plaintiff to avoid foreclosure and live in his home for several months could not constitute detrimental reliance). Therefore, Plaintiff's promissory estoppel count is **DISMISSED**.

### D. Wrongful Foreclosure

Defendant has also moved to dismiss Plaintiff's wrongful foreclosure claim. As Plaintiff pleads, no foreclosure has occurred on the subject property.

14

Am. Cmpl., Dkt. No. [1-2] at ¶ 47.  Therefore, Plaintiff cannot mount a claim for wrongful foreclosure.  See Roper v. Parcel of Land, 1:09-cv-312, 2010 WL 1691836 (N.D. Ga. 2010) ("Because Defendants did not proceed with the foreclosure after Plaintiff filed the present action, Plaintiff cannot prove a claim for wrongful foreclosure."). Plaintiff's wrongful foreclosure claim is **DISMISSED**.

### E. Georgia Fair Business Practices Act

Defendant next moves to dismiss Plaintiff's Georgia Fair Business Practices Act because the home mortgage industry is a regulated industry.  The Georgia FBPA "protect[s] consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.C.G.A. § 10-1-391(a).  However, this statute does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of [Georgia] or the United States." O.C.G.A. § 10-1-396(1).  "[T]he legislature 'intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that the FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to

15

protect against the known evils in the area of the agency's expertise.'" Brogdon v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000) (citing Chancellor v. Gateway Lincoln-Mercury, Inc., 233 Ga. App. 38, 43, 502 S.E.2d 799 (1998)).

Here, the at-issue conduct is regulated within the consumer marketplace. "The area of mortgage transactions is regulated by the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Georgia Residential Mortgage Act." Reese v. Wachovia Bank, N.A., 2009 U.S. Dist. LEXIS 94802, at *5 (N.D. Ga. Feb. 23, 2009). Therefore, "[t]he FBPA does not apply to residential mortgage transactions." Id.

While Plaintiff implicitly concedes that the GFBPA does not apply to residential mortgage transactions, Plaintiff argues that the residential mortgage exemption should not apply to her as the offending conduct occurred in Defendant's post-closing conduct, namely violating the modification and accelerating her debt. However, Plaintiff has not pointed this Court to any statute or case which would support this opinion. As residential mortgages are excluded from the Georgia FBPA, Plaintiff's Georgia FBPA claim is **DISMISSED**.

AO 72A
(Rev.8/82)

### F. Fair Credit Reporting Act

Plaintiff next alleges that Defendant violated the Fair Credit Reporting Act by continuing to "incorrectly and improperly report Plaintiff's loan status to major credit reporting bureaus." Am. Cmpl., Dkt. No. [1-3] at ¶ 79. As Defendant is not a Credit Reporting Agency and Plaintiff does not allege that it is, the only obligation imposed on Defendant under the FCRA would be as a furnisher of credit information. The FCRA imposes two duties on furnishers. First, 15 U.S.C. § 1681s-2(a) requires furnishers to provide accurate information to credit reporting agencies. However, the statute explicitly provides that there is no private cause of action for this provision. 15 U.S.C. § 1691s-2(c). Therefore, Plaintiff cannot state a claim based on this duty.

The second duty imposed on furnishers by the FCRA requires furnishers to investigate and respond promptly to notice of a dispute regarding the completeness or accuracy of information provided to a credit reporting agency. 15 U.S.C. § 1691s-2(b). This provision of the FRCA can be enforced through a private right of action, but only if the furnisher received notice of the dispute through a credit reporting agency. Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008).

17

Plaintiff only asserts that *she* notified the Defendant of her credit dispute. Nowhere does Plaintiff allege that the Defendant received notice from a credit reporting agency of any dispute. Therefore, Plaintiff has failed to state a claim against this Defendant under the FCRA, and Defendant's Motion to Dismiss Plaintiff's FCRA claim is **GRANTED**.

### G. Fraud

Defendant also moves to dismiss Plaintiff's fraud claim. To succeed on a claim for fraud,

> the plaintiff must show that the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury.

Perry v. Perry, 648 S.E.2d 193, 196 (Ga. Ct. App. 2007) (quoting Brown v. Techdata Corp., 234 S.E.2d 787, 790 (Ga. 1977)). Generally, fraud is not actionable when predicated upon either promises to perform some act in the future or a mere failure to perform promises made. J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 447 (Ga. Ct. App. 2007) (quoting Hamilton v. Advance Leasing & Rent-A-Car, Inc., 432 S.E.2d 559, 561 (Ga. Ct. App.

18

1993)). "Otherwise any breach of a contract would amount to fraud." Id. (quoting Hamilton, 432 S.E.2d at 561).

Plaintiff's fraud claim is grounded on the Defendant's statements that it was "going to agree" to a modification. But the Court finds that the alleged statements are not actionable because they were promises to act in the future. See Infrasource, Inc. v. Hahn Yalena Corp., 613 S.E.2d 144, 148 (Ga. Ct. App. 2005) ("[A] false representation made by a defendant, to be actionable, must relate to an existing fact or a past event."). Thus, Plaintiff's fraud claim is also **DISMISSED**.

## IV. Conclusion

As a result of the foregoing, Defendant's Motion to Dismiss the Amended Complaint [7] and Defendant's Motion to Strike the Plaintiff's Supplemental Response [20] are **GRANTED**. Plaintiff's Motion for Leave to File her Supplemental Response [22] is thus **DENIED**. Because this suit is now dismissed, Plaintiff's Second Motion for Preliminary Injunction [9], Plaintiff's First Motion to Deposit Funds into the Registry of the Court [13], and

Plaintiff's Motion for Temporary Restraining Order [2] are rendered **MOOT**.[3]

The Clerk is directed to close this case.

**SO ORDERED**, this  13th  day of January, 2012.

_____
**RICHARD W. STORY**
United States District Judge

---

[3]Lest the human tragedy described herein be lost in the legal analysis required to decide the case, the Court feels compelled to add this footnote. My knowledge of what transpired between these parties comes only from the allegations of the Complaint. Certainly, other facts may exist that would explain PHH's position. However, if the facts are as alleged in the Complaint, the actions that are likely to follow the Court's decision are indeed regrettable.

Based on the allegations in the Complaint, Ms. Caselli has tried to do everything right to save her home and still honor her financial obligation to PHH. When she lost her job in March 2009, she immediately contacted PHH to seek a modification of her mortgage. She complied with every request of PHH. PHH advised Ms. Casseli that her modification had been approved and that she was eligible for a modification if she complied with the plan. She then made payments consistent with the proposed modification for more than a year. After PHH failed to provide a signed copy of the Modification to Ms. Casseli and she was essentially forced to bring this action, she still continued to make payments. When PHH stopped accepting payments, she made her payments into the registry of the Court. Without any explanation or warning, Ms. Caselli received notice that PHH was proceeding with foreclosure. In spite of statements from representatives of PHH that she should disregard the foreclosure notice, PHH proceeded with steps toward foreclosure.

I have already determined that under the law, PHH has the right to proceed with foreclosure against Ms. Caselli. However, in the absence of some compelling reason for why it reversed its position concerning her modification, I am at a loss as to why PHH would proceed to take this woman's home. Surely there is some person behind this corporate name who can re-evaluate the position of PHH before further action is taken. Choosing not to proceed with the foreclosure under the present circumstances is an action that cannot be compelled by law, but should be compelled by conscience.

20